UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

THE BOARD OF COMMISSIONERS OF
CATRON COUNTY, NEW MEXICO,

     Plaintiff,

     v.

UNITED STATES OF AMERICA, *et al.*,

     Defendants.

Civil No. 1:12-cv-00237-MV-WPL

## THE UNITED STATES' MOTION TO DISMISS

## AND MEMORANDUM IN SUPPORT

## TABLE OF CONTENTS

**INTRODUCTION**............................................................................................................1

**STANDARD OF REVIEW** ..........................................................................................4

**I.    FEDERAL RULE OF CIVIL PROCEDURE 12(B)(1)** ...................................4

**STATUTORY BACKGROUND** ...................................................................................6

**I.    THE QUIET TITLE ACT** ...........................................................................6

**II.   REVISED STATUTE 2477** ...........................................................................7

**ARGUMENT** ...............................................................................................................8

**I.    CATRON COUNTY'S CLAIMS ARE BARRED BY THE QUIET TITLE
       ACT'S TWELVE-YEAR STATUTE OF LIMITATIONS** ............................8**

    **A. The Quiet Title Act's Twelve-Year Statute Of Limitations** .......................8

    **B. Catron County's Quiet Title Action Is Time-Barred Because The Statute
       Of Limitations Period Commenced No Later Than November 1977, When
       The Forest Service Published Its Roadless Area Review And Evaluation
       (RARE II) In The Federal Register** ...........................................................11

**II.   CATRON COUNTY'S COMPLAINT FAILS TO SET FORTH THE
       COUNTY'S QUIET TITLE CLAIM WITH PARTICULARITY,
       DEPRIVING THIS COURT OF JURISDICTION** ........................................17

**III.  CATRON COUNTY'S DERIVATIVE CLAIMS ARE BARRED BECAUSE
       THEY DEPEND ON THE COUNTY QUIETING TITLE TO ITS
       ALLEGED RIGHT-OF-WAY** .......................................................................22

**CONCLUSION** .........................................................................................................24

## INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 12(b)(1), the United States respectfully moves the Court to dismiss the March 7, 2012 "Complaint to Quiet Title," ECF No. 1, filed by Plaintiff Board of Commissioners of Catron County, New Mexico ("Catron County").   In its Complaint, Catron County seeks to quiet title under the Quiet Title Act ("QTA"), 28 U.S.C. § 2409a, to an alleged right-of-way over a portion of what the County refers to in the Complaint as the "River Road."  ECF 1 ¶¶ 79-88.  Catron County also raises claims seeking 1) a declaratory judgment that it possesses a right-of-way pursuant to Revised Statute 2477 ("R.S. 2477"), id. ¶¶ 89-94, and 2) a writ of mandamus to compel the Forest Service to provide access over the alleged R.S. 2477 right-of-way across National Forest System lands, id. ¶¶ 95-103.

Catron County's claims are barred by the QTA's twelve-year statute of limitations and must be dismissed for lack of jurisdiction.  The QTA requires a party to bring its quiet title action within twelve years of when the party "knew or should have known" of some claim by the United States adverse to the party's interest.  See 28 U.S.C. § 2490a(g).  Catron County knew or should have known that in 1977, more than 30 years prior to the initiation of this litigation, the United States published notice of an adverse claim to the area encompassing the majority of the alleged "River Road."[1]  In 1977, as part of the Forest Service's second Roadless Area Review and Evaluation ("RARE II") process, the Forest Service published notice in the Federal Register designating the Devils Creek area on the Gila National Forest as one of the many roadless and undeveloped areas that would be analyzed for possible designation as a "wilderness area" pursuant to the Wilderness Act 16 U.S.C. §§ 1131-36.  Exhibit 3 at pdf 2, 4 (42 Fed. Reg.

---

[1] The United States is still researching its files for evidence that the statute of limitations was triggered even earlier than 1977, but the 1977 date as a trigger is still dispositive of this litigation.

59,688; 59,705 (Nov. 18, 1977)).[2]  Virtually the entire length of Catron County's claimed right-of-way to the purported "River Road," described as "approximately 15-20 miles in length" in the Complaint, ECF No. 1 ¶ 42, lies within the Devils Creek Roadless Area (Roadless Area Code 3-151).  See Exhibit 7 (Forest Service map showing approximate location of the County's claimed right-of-way, within the San Francisco River channel, plainly transecting the Devils Creek Roadless Area).

One of the criteria for the Forest Service's 1977 "roadless" designation defined a roadless area as "[a]n area of undeveloped Federal land within which there are no improved roads maintained for travel by means of motorized vehicles intended for highway use."  Exhibit 2 at pdf 5.  The Forest Service's 1977 Federal Register notice designating the Devils Creek area as "roadless" was thus overtly and diametrically in conflict with Catron County's current claim that in 1976 the County possessed title to a right-of-way to a maintained "public highway" that existed prior to 1899, that bisects the designated roadless area, and that includes "a *minimum* width of 66 feet and any features, facilities, cuts, slopes, water bars, drainage runouts, and fill areas necessary to ensure a safe travel surface."  See, e.g., Complaint, ECF No. 1 ¶¶ 47, 49, 51 55-56, 78 (emphasis added), 83.  And, Catron County alleges it is entitled to quiet title for the County's "employees and the general public to enjoy *unfettered* use and routine maintenance of the road" without administrative interference by the Forest Service, which also is plainly inconsistent with the Forest Service's designation of the area as "roadless."  Id. ¶ 57 (emphasis added).

---

[2]  Exhibits are attached to and authenticated by the Declaration of George W. McKay ("McKay Decl."), Regional Title Claims Specialist for the Southwestern Region, U.S. Department of Agriculture Forest Service, filed herewith.  Pursuant to D.N.M.LR-Civ. 10.5, Plaintiff, through counsel of record, has agreed to the filing of exhibit pages in excess of the limit in that rule.

The Forest Service's designation of the Devils Creek area as "roadless" in a 1977 Federal Register notice provided unambiguous notice that the Forest Service did not recognize Catron County's alleged "public highway" right-of-way.   As this Court has held, publication of a Federal Register notice designating an area as roadless is legally sufficient to "put Plaintiffs and the public on notice [on the date of the Federal Register publication] that [the federal agency] claimed all of the area and did not recognize any alleged rights-of-way, thus triggering the 12 year limitations period for challenging that finding" under the QTA.   Sw. Four Wheel Drive Ass'n v. Bureau of Land Mgmt., 271 F. Supp. 2d 1308, 1312 (D.N.M. 2003) *aff'd on other grounds* 363 F.3d 1069 (10th Cir. 2004).  Thus, Catron County's cause of action under the QTA accrued no later than 1977, and the twelve-year statute of limitations ran long before the initiation of the present lawsuit.

Because the United States' adverse claim triggered the QTA statute of limitations decades prior to the initiation of this action, Catron County's action to quiet title to a right-of-way through the middle of a designated roadless area is time-barred.  The statute of limitations requirement of the QTA is a jurisdictional limitation on the United States' waiver of sovereign immunity.  Knapp v. United States, 636 F.2d 279, 282 (10th Cir. 1980).  Therefore, Catron County's QTA claims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of jurisdiction.

Even if Catron County's quiet title claim was not barred by the QTA's statute of limitations, the claim would be barred because the Complaint does not adequately identify the County's claims in the alleged R.S. 2477 right-of-way to invoke the QTA's waiver of sovereign immunity.  Pursuant to the QTA, "[t]he complaint shall set forth *with particularity* the nature of the right, title, or interest which the plaintiff claims in the real property, the circumstances under

- 3 -

which it was acquired, and the right, title, or interest claimed by the United States."  28 U.S.C. § 2409a(d) (emphasis added).  Catron County's Complaint fails to identify the nature of its claims in the alleged right-of-way, as it includes, at best, only vague, conclusory, and inconsistent descriptions of the location, length ("approximately 15-20 miles in length," Complaint ECF No. 1 ¶ 42), and width of the alleged right-of-way.  And the Complaint provides no explanation whatsoever as to how the County acquired title to a right-of-way that was allegedly created long before the County, or even the State of New Mexico, existed.  Because the Complaint does not meet the pleading with particularity requirements of 28 U.S.C. § 2409a(d), the County has failed to establish this Court's jurisdiction, and its quiet title claim should be dismissed on this alternative basis.

Catron County's other claims also are not properly before this Court.  The QTA provides the exclusive means by which a party may obtain relief based on a claim of title adverse to the United States' interests.  <u>Block v. North Dakota</u>, 461 U.S. 273, 286 (1983).  Catron County's Second Claim for Relief (seeking a declaratory judgment that the County holds an R.S. 2477 right-of-way across National Forest System lands) and Third Claim for Relief (seeking a mandamus order requiring the Forest Service to provide Catron County access to its alleged right-of-way) both depend on Catron County's claim of title in the right-of-way, and therefore may only be brought pursuant to the QTA.  Therefore, Catron County's Second and Third Claims for Relief are not subject to a waiver of sovereign immunity and are also barred.

## **STANDARD OF REVIEW**

### I.      **FEDERAL RULE OF CIVIL PROCEDURE 12(B)(1)**

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a party may file a motion to dismiss a claim for relief based on the court's "lack of subject-matter jurisdiction."  Fed. R. Civ. P.

12(b)(1).  A complaint must be dismissed for lack of subject matter jurisdiction if the action, inter alia, "is not one described by any jurisdictional statute." Baker v. Carr, 369 U.S. 186, 198 (1962).  "Courts lack subject matter jurisdiction over a claim against the United States for which sovereign immunity has not been waived." Iowa Tribe of Kan. and Neb. v. Salazar, 607 F.3d 1225, 1232 (10th Cir. 2010) (citing Normandy Apartments, Ltd. v. U.S. Dep't of Hous. & Urban Dev., 554 F.3d 1290, 1295 (10th Cir. 2009)).

Motions to dismiss pursuant to Rule 12(b)(1) may take two forms.  "The moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell, 363 F.3d 1072, 1074 (10th Cir. 2004) (quoting Maestas v. Lujan, 351 F.3d 1001, 1013 (10th Cir. 2003)).   In the first form, the movant asserts that the allegations in the complaint on their face fail to establish the court's subject matter jurisdiction.  "In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true." Holt v. United States, 46 F.3d 1000, 1002 (10th Cir. 1995) (citation omitted).  In the second form, the movant may present evidence challenging the factual allegations in the complaint upon which subject matter jurisdiction depends.  "When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations . . . [but] reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion." Id. at 1003 (citations omitted).

## STATUTORY BACKGROUND

**I.** **THE QUIET TITLE ACT**

The United States is immune from suit except when Congress explicitly waives sovereign immunity.  Block v. North Dakota, 461 U.S. 273, 280 (1983).  With the Quiet Title Act ("QTA"), 28 U.S.C. § 2409a, Congress provided a limited waiver of sovereign immunity for actions to quiet title against the United States.  Under the QTA, "[t]he United States may be named as a party defendant in a civil action under this section to adjudicate a disputed title to real property in which the United States claims an interest, other than a security interest or water rights."  Id. § 2409a(a).  The QTA is the "exclusive means by which adverse claimants [may] challenge the United States' title to real property."  Block, 461 U.S. at 286.

The QTA imposes a strict statute of limitations restricting the jurisdiction of the district courts.  28 U.S.C. § 2409a(g).  "Any civil action under this section, except for an action brought by a State, shall be barred unless it is commenced within twelve years of the date upon which it accrued.  Such action shall be deemed to have accrued on the date the plaintiff or his predecessor in interest knew or should have known of the claim of the United States."  Id.  In addition, a plaintiff's complaint "shall set forth with particularity the nature of the right, title, or interest which the plaintiff claims in the real property, the circumstances under which it was acquired, and the right, title, or interest claimed by the United States."  Id. § 2409a(d).  Because the QTA is a jurisdictional limit on the waiver of sovereign immunity, its requirements and limitations must be strictly construed in favor of the United States.  "[W]hen Congress attaches conditions to legislation waiving the sovereign immunity of the United States, those conditions must be strictly observed, and exceptions thereto are not to be lightly implied."  Block, 461 U.S. at 287 (citations omitted).

## II.     REVISED STATUTE 2477

In 1866, Congress provided for public access across unreserved public domain by granting rights-of-way for the construction of highways.  The Act of July 26, 1866, § 8, ch. 262, 14 Stat. 251, 253, *codified at* 43 U.S.C. § 932 ("The right of way for the construction of highways over public lands, not reserved for public uses, is hereby granted."), *repealed by* Federal Land Policy and Management Act of 1976 ("FLPMA"), Pub. L. No. 94-579 § 706(a), 90 Stat. 2743, 2793.  This 1866 statute, commonly referred to as "R.S. 2477," was self-executing in some states.  In other words, an R.S. 2477 right-of-way could come into existence without formal action by public authorities whenever the public sufficiently indicated its intent to accept the grant by establishing a public highway across public lands.  See  S. Utah Wilderness Alliance v. Bureau of Land Mgmt., 425 F.3d 735, 770 (10th Cir. 2005).

On October 21, 1976, Congress enacted the Federal Land Policy and Management Act ("FLPMA"), which repealed R.S. 2477 but preserved "any valid" right-of-way "existing on the date of approval of this Act."  Pub. L. No. 94-579, §§ 701(a), 706(a), 90 Stat. 2743, 2786, 2793 (1976); see also Southern Utah, 425 F.3d at 741 ("In 1976 . . . Congress abandoned its prior approach to public lands and instituted a preference for retention of the lands in federal ownership, with an increased emphasis on conservation and preservation.").  Accordingly, rights-of-way under R.S. 2477 that were perfected before the statute's repeal in 1976 and which have not lapsed remain valid today.  State or local governments may file suits to quiet title against the United States if they can demonstrate that the grant of a right-of-way was accepted prior to the statute's repeal in 1976 or, where applicable, prior to the earlier withdrawal of the public land underlying the alleged right-of-way from the operation of R.S. 2477.  However, because the QTA represents the exclusive means by which claimants may challenge the United

States' title to real property, R.S. 2477 claims are barred if the claimant cannot satisfy the conditions to the waiver of sovereign immunity under the statute.  See, e.g., Sw. Four Wheel Drive Ass'n. v. Bureau of Land Mgmt, 363 F.3d 1069, 1071 (10th Cir. 2004) (holding that the plaintiff "cannot establish a claim under the Quiet Title Act [to a public right-of-way under R.S. 2477 across federal public lands] and thus it cannot bring suit against the United States").

## ARGUMENT

### IV.    CATRON COUNTY'S CLAIMS ARE BARRED BY THE QUIET TITLE ACT'S TWELVE-YEAR STATUTE OF LIMITATIONS

#### A.  The Quiet Title Act's Twelve-Year Statute Of Limitations

In order to bring a valid claim against the United States under the QTA, a party must commence the action within twelve years of the time it knew or should have known of the United States' claim of interest in the property:

> Any civil action under this section, except for an action brought by a State, shall be barred unless it is commenced within twelve years of the date upon which it accrued.  Such an action shall be deemed to have accrued on the date the plaintiff or his predecessor in interest knew or should have known of the claim of the United States.

28 U.S.C. § 2409a(g).[3]  Compliance with this statute of limitations is a jurisdictional perquisite to a QTA action against the United States.  Knapp, 636 F.2d at 282; Rio Grande Silvery Minnow v. Bureau of Reclamation, 599 F.3d 1165, 1175-76 (10th Cir. 2010).   As a jurisdictional condition on the waiver of sovereign immunity, the twelve-year statute of limitations is strictly construed in favor of the United States.  Block v. North Dakota, 461 U.S. 273, 287 (1983); Vincent Murphy Chevrolet Co. v. United States, 766 F.2d 449, 452 (10th Cir. 1985); see also Knapp, 636 F.2d at 282 ("As a condition to suit against the sovereign, the 12-year rule must be

---

[3] The QTA includes different statute of limitations provisions for claims brought by States.  See 28 U.S.C. §§ 409a(h)-(k).

strictly construed in favor of the sovereign.") (citing Stubbs v. United States, 620 F.2d 775, 779 (10th Cir. 1980)).

The QTA statute of limitations begins to run when the plaintiff knew or should have known of any claim by the United States adverse to the plaintiff's interest.  See 28 U.S.C. § 2490a(g).  In determining the accrual date, courts apply a test of reasonableness.  California ex rel., State Land Comm'n v. Yuba Goldfields, Inc., 752 F.2d 393, 396 (9th Cir. 1985); Amoco Prod. Co. v. United States, 619 F.2d 1383, 1388 (10th Cir. 1980).  "All that is necessary is a reasonable awareness that the Government claims some interest adverse to the plaintiff's." Knapp, 636 F.2d at 283.  Reasonable awareness does not require the plaintiff to know the exact nature of the claim.  See Rio Grande Silvery Minnow, 599 F.3d at 1176 ("[T]he starting of the limitations clock is not dependent on the plaintiff knowing the precise nature of the property interest upon which the United States predicates its claim of title."); Spirit Lake Tribe v. North Dakota, 262 F.3d 732, 738 (8th Cir. 2001) ("This standard does not require the government to provide explicit notice of its claim [and t]he government's claim need not be 'clear and unambiguous.'") (quoting State of N.D. ex rel. Bd. of Univ. & Sch. Lands v. Block, 789 F.2d 1308, 1313 (8th Cir.1986)); Knapp, 636 F.2d at 283 ("Knowledge of the claim's full contours is not required.  All that is necessary is a reasonable awareness that the Government claims some interest adverse to the plaintiff's.").  As a result, "the trigger for starting that twelve-year clock running is an exceedingly light one."  George v. United States, 672 F.3d 942, 944 (10th Cir. 2012).  The action accrues when the plaintiff or his predecessor "objectively" should have known about the government's adverse claim of interest.  Id. (citing Rio Grande Silvery Minnow, 599 F.3d at 1176; Rosette Inc. v. United States, 141 F.3d 1394, 1397 (10th Cir. 1998); Knapp, 636 F.2d at 283).

Under the reasonableness standard, it is not necessary for the government to provide an explicit notice of its claim or to act to enforce its claims. Spirit Lake Tribe, 262 F.3d at 738; see also George, 672 F.3d at 946-47 ("The limitations period isn't triggered only when the government acts to enforce its claim--by tearing down a fence, issuing a citation, or the like."); Sw. Four Wheel Drive, 271 F. Supp. 2d at 1314 ("[T]he statutory limitations language makes no reference to enforcement of the Government's claim, only to knowledge of the claim's existence.") (citing 28 U.S.C. § 2409 a(g)).  Rather, it is enough that a reasonable landowner would have been alerted to the government's claimed interest in the land. Shultz, 886 F.2d at 1157.  Therefore, a plaintiff is not permitted "to wait until the adverse claims of title asserted by them and the United States crystallize into well-defined and open disagreements before commencing a quiet-title action." Rio Grande Silvery Minnow, 599 F.3d at 1188.

Even an invalid government claim is sufficient to trigger the statute of limitations under the QTA, as long as the landowner "has reason to know that the government claims some type of adverse interest in that land." Spirit Lake Tribe, 262 F.3d at 738; see also George, 672 F.3d at 946 ("The merits of the claim or assertion of adverse interest are irrelevant.  One can be on *notice* of a claim even if that claim lacks any legal *merit*.") (emphases in original).  The reasonable awareness standard applies to cases involving claimed easements in addition to cases involving fee simple interests. See Wis. Valley Improvement Co. v. United States, 569 F.3d 331, 335 (7th Cir. 2009) (applying a reasonableness standard for a claimed easement interest); Alleman v. United States, 372 F. Supp. 2d 1212, 1226 (D. Or. 2005) (employing a reasonableness test in a claim for an R.S. 2477 right-of-way).

Courts also recognize that the "should have known" language in the QTA statute of limitations bars claims based on constructive notice as well as actual notice. Amoco Production

<u>Co.</u>, 619 F.2d at 1387-88.[4]  Publication of a claim in the Federal Register is sufficient notice to trigger the twelve-year limitations period.  In <u>George</u>, the Tenth Circuit held that "the QTA's limitations clock starts running as soon as the federal government publishes a property claim in the Federal Register and a QTA plaintiff or her predecessor in interest is 'subject to or affected by' it."  672 F.3d at 944-45.  Similarly, in <u>Southwest Four Wheel Drive</u>, this Court held that publication of a notice designating an area as a "Wilderness Study Area" in the Federal Register "provided notice that triggered the QTA's statute of limitations."  271 F. Supp. 2d at 1312.[5]

> **B. Catron County's Quiet Title Action Is Time-Barred Because The Statute Of Limitations Period Commenced No Later Than November 1977, When The Forest Service Published Its Roadless Area Review And Evaluation (RARE II) In The Federal Register**

Catron County's action to quiet title to the claimed "River Road" is time-barred by the Quiet Title Act's statute of limitations.  The statute of limitations time period began to run no later than when the Forest Service's second Roadless Area Review and Evaluation ("RARE II") list of inventoried roadless areas was published in the Federal Register on November 18, 1977. <u>See</u> Exhibit 3, Roadless Area Review and Evaluation II, 42 Fed. Reg. 59,688 (Nov. 18, 1977). The Federal Register notice expressly identifies the 91,545-acre Devils Creek area on the Gila National Forest as an inventoried roadless area.  <u>Id.</u> at pdf 4, 42 Fed. Reg. at 59,705.  The general

---

[4] <u>See also</u> <u>Yuba Goldfields</u>, 752 F.2d at 396 ("Constructive notice of recorded deeds may commence the running of the limitations period."); <u>Hawaii v. United States</u>, 866 F.2d 313, 313 (9th Cir. 1989) ("[T]he Quiet Title Act explicitly provides that constructive notice is sufficient to trigger the twelve-year statute of limitations.").

[5] <u>See also</u> <u>Diamond Ring Ranch, Inc. v. Morton</u>, 531 F.2d 1397, 1405 (10th Cir. 1976) ("[P]ublication of the regulations in the Federal Register is constructive notice of their contents."); <u>Shiny Rock Mining Corp. v. United States</u>, 906 F.2d 1362, 1364 (9th Cir. 1990) ("Publication in the Federal Register is legally sufficient notice to all interested or affected persons regardless of actual knowledge or hardship resulting from ignorance.") (citation omitted); <u>Govt. of Guam v. United States</u>, 744 F.2d 699, 701 (9th Cir. 1984) (holding that executive order published in the Federal Register constituted formal notice for QTA limitations period).

route that Catron County alleges for its claimed right-of-way is a "River Road" that "commences at a point south of the San Francisco Plaza to the property owned by Bill Kelly," Complaint, ECF No. 1 ¶ 37, and that "follows the San Francisco River throughout its trajectory," id. ¶ 42. That path, as mapped by the Forest Service's Regional Title Claims Specialist, runs almost entirely through the middle of the Devils Creek Roadless Area (Area 3151). Exhibit 7. Thus, there is no question that if Catron County held title to its claimed right-of-way prior to 1976 as it alleges, Complaint, ECF No. 1 ¶ 56, the County "knew or should have known" of the United States' adverse claim by virtue of the United States' identification of the area containing the vast majority of the claimed right-of-way as "roadless" under RARE II, to be considered and managed for possible inclusion in the National Wilderness Preservation System. That 1977 Federal Register notice therefore triggered the QTA statute of limitations, and the County's claims were barred no later than 1989.

By way of background, after passage of the Wilderness Act of 1964, 16 U.S.C. § 1131, *et seq.*, the Forest Service initiated a Roadless Area Review and Evaluation ("RARE I") program to identify those roadless and undeveloped areas that were the best candidates for inclusion in the National Wilderness Preservation System. Wyoming v. U.S. Dep't of Agric., 661 F.3d 1209, 1221 (10th Cir. 2011). The initial RARE I process was abandoned after a legal challenge, and RARE II was initiated to build upon and perfect the previous planning effort of RARE I. Id. at 1221-22. RARE II was an acceleration of the roadless portion of the Forest Service's land management planning process under the National Forest Management Act ("NFMA"), 16 U.S.C. §§1600-14. Id.; Exhibit 3 at pdf 2, 42 Fed. Reg. at 59,688. RARE II "created a national inventory of roadless areas that were potentially suitable for 'wilderness' designation under the Wilderness Act." Wyoming, 661 F.3d at 1222; see also Exhibit 3 at pdf 2, 42 Fed. Reg. at

59,688 ("The inventory phase [of RARE II] began with an identification and mapping of all roadless and undeveloped areas in the National Forest System").

As part of the RARE II inventory process, the Forest Service held 19 public workshops in New Mexico in 1977, including workshops scheduled in Reserve, New Mexico, the county seat for Catron County. See Exhibit 1 at pdf 1, 5. The Forest Service published the completed list of RARE II inventoried roadless areas in the Federal Register on November 18, 1977. Exhibit 3, 42 Fed. Reg. 59,688. This published list of inventoried roadless areas included the Devils Creek Roadless Area 3151, which almost completely encompasses the alleged R.S. 2477 right-of-way over the purported "River Road." Id. at pdf 4, 42 Fed. Reg. at 59,705; Exhibit 7 (map depicting location of claimed right-of-way in middle of Devils Creek Roadless Area).

Publication of the RARE II inventoried roadless areas list in the Federal Register put Catron County on notice that the Forest Service considered the Devil's Creek Roadless Area to be "roadless," and one of the areas in the National Forest System "that meet minimum criteria as wilderness candidates under the Wilderness Act." Exhibit 3 at pdf 2, 42 Fed. Reg. at 59,688. The Forest Service's determination that the area encompassing the claimed "River Road" was roadless in 1977 constitutes a claim adverse to the interests of the County alleging that it possessed an R.S. 2477 right-of-way--indeed, a "public highway," see Complaint, ECF No. 1 ¶ 83--through the middle of the designated roadless area.

In Southwest Four Wheel Drive Ass'n, this Court held that designation of a Wilderness Study Area ("WSA") encompassing a claimed R.S. 2477 right-of-way provided notice that the Bureau of Land Management ("BLM") regarded the area as roadless and did not recognize any rights-of-way in the area. 271 F. Supp. 2d at 1311-12. The Court concluded that publication of the WSA designation in the Federal Register triggered the statute of limitations under the QTA.

Id.  Similarly here, the publication of the Devils Creek Roadless Area designation in the Federal Register provided notice to the public that the Forest Service did not recognize any public roads or alleged rights-of-way in the area.  Upon designation of the Devils Creek Roadless Area in the Federal Register on November 18, 1977, Catron County knew or should have known of the United States' adverse claim to the area encompassing the alleged R.S. 2477 right-of-way, thus triggering the QTA's twelve-year statute of limitations.  See also George, 672 F.3d at 944-45 (holding that publication in the Federal Register of the Forest Service's adverse claim provided notice sufficient to trigger the statute of limitations under the QTA).

Catron County acknowledges that inclusion of the County's claimed right-of-way in the middle of the Devils Creek Roadless Area is in direct conflict with the County's title claim.  In its Complaint, the County alleges that "on May 20, 2011, the Defendant Forest Service . . . stated that this area [of the claimed right-of-way] is within the Devils Park [sic] Roadless Area and that travel on the road is limited to equestrian and foot travel," and that by "refusing to recognize a public road" the Forest Service is allegedly "violating the Congressional mandate contained within Revised Statute 2477 by interfering with a right-of-way over public lands."  Complaint ECF No. 1 ¶¶ 8-9.  That the County's Complaint fails to note that inclusion of the claimed right-of-way in the Devils Creek Roadless Area originated in 1977, not in a May 20, 2011 statement by the Forest Service, is of little moment.  See id. ¶ 8.  The statute of limitations was triggered by the 1977 Federal Register notice, not by subsequent acts of the Forest Service implementing that notice.  In Southwest Four Wheel Drive Ass'n, this Court rejected the plaintiffs' argument that the QTA limitations period did not begin running until BLM "permanently and physically blocked [the public] from using these 'roads,'" because although that action "was arguably the first time BLM enforced its claim, the claim was known or should have been known through

publication in the Federal Register." 271 F. Supp. 2d at 1314. This Court emphasized that "[t]he distinction is critical because the statutory limitations language makes no reference to enforcement of the Government's claim, only to knowledge of the claim's existence." Id. (citing 28 U.S.C. § 2409a(g)).

The Forest Service took additional public actions that reiterated and reinforced the determination in the 1977 Federal Register notice that the Devils Creek area was "roadless," thereby putting the public and Catron County on notice of the United States' position that there were no public roads in this location. For instance, in June 1978, the Forest Service published for public review and comment a Draft Environmental Statement and a New Mexico supplement for RARE II to determine how to administer the nation's roadless areas that again identified the Devils Creek Roadless Area as devoid of public roads and that showed its location on nationwide and state-wide Forest Service maps of inventoried roadless areas. Exhibit 4, Exhibit 5 at pdf 5, Exhibit 6 (excerpt of map). Following public comment, this Draft Environmental Statement was finalized and, in January 1979, the Forest Service issued the Final Environmental Statement, again listing Devils Creek as a roadless area (twice) and identifying it in a map on the Gila National Forest. Exhibit 8 at pdf 19, pdf 20, pdf 22.

The Forest Service took further action on February 12, 1999, publishing notice of the government's adverse claim to the alleged right-of-way in the Federal Register, issuing an interim rule specifically suspending road construction and reconstruction within the RARE II inventoried roadless areas, including Devils Creek. See Exhibit 10 at pdf 1, 64 Fed. Reg. 7290 (Feb. 12, 1999) ("Temporary Suspension of Road Construction and Reconstruction in Unroaded Areas"). These actions taken after the 1977 Federal Register notice not only reinforce the conclusion that Catron County's quiet title action against the United States accrued in 1977, but

each of the actions would also constitute its own trigger of the QTA statute of limitations period, thereby also barring the County's claims.

Catron County alleges that the statute of limitations for its claim did not accrue until private landowners physically blocked the alleged right-of-way in May 2006.  Complaint, ECF No. 1 ¶ 19.   This allegation fails because, as discussed above, actual hostile action or enforcement of the claim is not necessary to trigger the statute of limitations under the QTA.  See also Rosette, 141 F.3d at 1398 (holding that the QTA was "clear" that a plaintiff's quiet title claim accrued when "the plaintiff knew or should have known of the United States' interest" and "the fact that [the plaintiff] decided not to contest that interest until a disagreement arose cannot defeat the workings of the statute of limitations"); Vincent Murphy Chevrolet Co., 766 F.2d at 452 (rejecting the appellants' argument that the quiet title action did not accrue until a controversy arose); Rio Grande Silvery Minnow, 599 F.3d at 1188 ("[O]ur precedent does not allow plaintiffs to wait until the adverse claims of title asserted by them and the United States crystallize into well-defined and open disagreements before commencing a quiet-title action"). The QTA statute of limitations period began when the County knew or should have known, based on a reasonable awareness standard, of some claim by the government of an adverse interest.  Here, the United States claimed an interest adverse to the County's alleged R.S. 2477 right-of-way when the Forest Service designated the area as roadless under RARE II, and the statute of limitations period began no later than when the Forest Service published the roadless designation in the Federal Register in 1977, long before the landowners blocked access to the alleged right-of-way.

The Tenth Circuit in George v. United States, 672 F.3d 942 (10th Cir. 2012), rejected an argument that a plaintiff's claim did not accrue until the Forest Service removed her fence in

2005.  Instead, the Tenth Circuit determined that the plaintiff's predecessor in interest knew or should have known about fencing regulations published in the Federal Register in 1977 when he received the land in 1979.  Id. at 945-47; see id. at 946 ("The [QTA] limitations period isn't triggered only when the government acts to *enforce* its claim--by tearing down a fence, issuing a citation, or the like.  As we've already explained, by its plain terms the QTA is triggered by the government's *claim*--by its *assertion* of 'some interest adverse' to the plaintiff or her predecessor.") (citing Knapp, 636 F.2d at 283; emphases in original).  Similarly, this Court in Southwest Four Wheel Drive Ass'n held that publication of the area's designation as a Wilderness Study Area in the Federal Register provided notice of the United States' claim, thus triggering the QTA statute of limitations prior to the BLM's physical closure of the alleged R.S. 2477 right-of-ways in 1998.  271 F. Supp. 2d at 1312-14.

As in George and Southwest Four Wheel Drive Ass'n, the QTA statute of limitations time period here began running long before any physical closure of, or other dispute over, the alleged right-of-way.  Publication of the Devils Creek Roadless Area designation in the Federal Register provided notice of the Forest Service's adverse claim in 1977, thus triggering the statute of limitations and time-barring this action.

## II.   CATRON COUNTY'S COMPLAINT FAILS TO SET FORTH THE COUNTY'S QUIET TITLE CLAIM WITH PARTICULARITY, DEPRIVING THIS COURT OF JURISDICTION

A complaint seeking to quiet title as against the United States must clearly identify the plaintiff's property claims, as well as the United States' adverse claims in that same property.  Specifically, the QTA provides:

> The complaint shall set forth *with particularity* the nature of the right, title, or interest which the plaintiff claims in the real property, the circumstances under which it was acquired, and the right, title, or interest claimed by the United States.

28 U.S.C. § 2409a(d) (emphasis added).  Because it is a waiver of sovereign immunity, the QTA must be strictly construed in favor of the United States.  See United States v. Mottaz, 476 U.S. 834, 841 (1986).  The specific requirements of the QTA are therefore subject to the rule that "when Congress attaches conditions to legislation waiving the sovereign immunity of the United States, those conditions must be strictly observed, and exceptions thereto are not to be lightly implied."  Block, 461 U.S. at 287.

As a condition on the United States' waiver of sovereign immunity, a failure to satisfy the pleading requirements of 28 U.S.C. § 2409a(d) is a jurisdictional bar to a plaintiff's quiet title claim.  See, e.g., Mottaz, 476 U.S. at 843 (holding that the QTA "provides the United States' consent to suit concerning its claim to these lands, provided, of course, that the plaintiff challenging the Government's title meets the conditions attached to the United States' waiver of immunity"); Washington County v. United States, 903 F. Supp. 40, 42 (D. Utah 1995) (holding that, by failing to plead its RS 2477 quiet title claims with particularity, the plaintiff county "has failed to comply with the conditions and requirements of 28 U.S.C. § 2409a by which the United States consents to suit in quiet title actions").  As a result, a complaint that is based upon conclusory allegations, rather than specific averments regarding the basis of a claim to quiet title, fails to establish a waiver of sovereign immunity and the court is without jurisdiction to hear the claim.  If a federal court finds that it lacks subject matter jurisdiction, then it must dismiss the action.  See Fed. R. Civ. P. 12(h)(3).

In Washington County, the Court dismissed several claims to alleged R.S. 2477 rights-of-way, in part, on the grounds that the complaint did not allege with particularity the interests claimed or the circumstances under which the interests were acquired.  In that matter, the plaintiff county alleged that it was "'the owner of the highway rights-of-way shown' on the map

attached to its complaint and that it 'acquired its rights-of-way through public use, by County construction and maintenance of the rights-of-way or both.'"  Id. at 42.  The Washington County Court agreed with the United States that the county's conclusory allegations did not identify "with particularity" any interest in real property, nor did they describe "the circumstances under which" any property interest was acquired.  Id.  Accordingly, the Court held that the county's failure to comply with the conditions and requirements of 28 U.S.C. §2409a(d) was an alternative basis for dismissing the county's quiet title claim.  Id.

Likewise, in Hazel Green Ranch, LLC v. U.S. Dep't of Interior, No. 1:07-cv-00414-OWW SMS, 2010 WL 1342914 (E.D. Cal. April 5, 2010), the Court examined in detail a county's allegations seeking to quiet title in two alleged R.S. 2477 rights-of-way.  Id. *5-8.  The Hazel Green Ranch Court found that the allegations in the county's complaint were inconsistent and vague with regard to the stretches of roads in which the county sought to quiet title--both in terms of length and in the endpoints for the claimed rights-of-way.  Id. *5-6.  The Court, finding the county's complaint "on its face, confusing and contradictory," dismissed the quiet title claims "on the ground that the County has not provided a clear and consistent description of the claimed property interest(s)."  Id. *6.  The Hazel Green Ranch Court also dismissed the claims for the failure of the county to "specifically and unambiguously describe the nature of its assertion of ownership over the roads.  Id. *8.  In examining the county's allegations in this regard, the Court found that allegations that the roads appeared on maps was inadequate because "authorizing, mapping or designating the roads does not, in and of itself, establish County ownership."  Id. *7.  The complaint's apparent allegations that the roads were at one time State-owned, added to the confusion, because the complaint "does not specify whether [the county] claims that it has been the owner of the roads since that date [when the roads first came into existence] or how it

acquired any claimed interest from the State of California."  Id.  The Court therefore found that the county's complaint had not alleged with adequate particularity how the county acquired its alleged interests in the R.S. 2477 rights-of-way, as required by 28 U.S.C. § 2409a(d).

Catron County's Complaint suffers from the same fatal defects that resulted in dismissal of the R.S. 2477 quiet title claims in Washington County and Hazel Green Ranch.  Although Catron County's Complaint identifies the *general* location of the County's alleged right-of-way running directly through the Devils Creek Roadless Area, the Complaint wholly fails to allege with any particularity the actual location of the alleged right-of-way, its length, its course, or its precise width.  For instance, Catron County alleges that "an R.S. 2477 right-of-way . . . includes a minimum width of 66 feet," but fails to identify the actual width claimed.  Complaint, ECF No. 1 ¶ 78.  Even more critically, Catron County fails to identify the length of its alleged right-of-way, alleging only that it is "approximately 15-20 miles in length."  Id. ¶ 42.  This great disparity of 5 linear miles out of 20 (or more) wholly fails to identify with any degree of precision the real property interest to which the County seeks to quiet title.

The County is likewise vague and inconsistent in identifying the alleged right-of-way's point of beginning--alleging only that the right-of-way begins at an unidentified "point south of the San Francisco Plaza," id. ¶ 37, or possibly at an unidentified location in the town of Reserve, which is north of the San Francisco Plaza, id. ¶ 55.  See also McKay Decl. ¶ 13.  The allegations about the end point of the alleged right-of-way are equally vague and inconsistent.  See McKay Decl. ¶ 13.  And, there are absolutely no allegations in the Complaint regarding the specific location course, or centerline of the alleged right of way, which are practical and fundamental elements of road, easement, and right-of-way descriptions.  McKay Decl. ¶ 16.  The County's description is not sufficient for a determination of the actual location of the road, and the County

has wholly failed to identify with any degree of particularity an alleged real property interest to which this Court may quiet title.

Moreover, R.S. 2477 granted rights-of-way only for the construction of highways over public lands that were "not reserved for public uses." The Act of July 26, 1866, § 8, ch. 262, 14 Stat. 251, 253, *codified at* 43 U.S.C. § 932. As the Complaint acknowledges, the lands containing Catron County's alleged right-of-way "were placed into Forest Service status via Presidential Proclamation on March 2, 1899." Complaint, ECF No. 1 ¶ 51. The Complaint thus tacitly concedes that the alleged right-of-way would have had to have been created and accepted for public use prior to 1899, long before Catron County existed. The Complaint, however, makes no allegations that would indicate how title to the alleged right-of-way would have vested pursuant to R.S. 2477 in some other (unidentified) entity prior to 1899 and how that title would have been ultimately transferred to Catron County. The Complaint thus fails to allege with particularity "circumstances under which [the alleged right of way] was acquired," as required by the QTA, 28 U.S.C. § 2409a(d).

Catron County has failed to plead its quiet title claim with the particularity required to invoke the QTA's waiver of sovereign immunity, both with respect to the nature of Catron County's claim in the alleged right-of-way and the circumstances under which the County acquired that property. Catron County's vague and conclusory Complaint deprives the United States --and the Court—of their right to know the precise contours of the County's claim, and therefore this Court is without jurisdiction to hear it. Catron County's quiet title claim should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).

**III.   CATRON COUNTY'S DERIVATIVE CLAIMS ARE BARRED BECAUSE THEY DEPEND ON THE COUNTY QUIETING TITLE TO ITS ALLEGED RIGHT-OF-WAY**

In addition to its express QTA claim seeking to quiet title to its alleged R.S. 2477 right-of-way, Catron County raises two additional claims that are also barred.  Catron County requests a declaratory judgment that it possesses an R.S. 2477 right-of-way and also requests a writ of mandamus against the Forest Service to provide access over the alleged right-of-way.  ECF No. 1 ¶¶ 89-103.  These claims are nothing more than attempts to plead around the QTA, and are so intertwined with the QTA claim that they cannot be decided in the absence of a resolution of the title dispute between the parties.  This Court lacks jurisdiction over the Catron County's claim to quiet title, and Catron County's derivative claims must also be dismissed.

The Supreme Court and the Tenth Circuit have expressly held that when a claim depends on quieting title against the United States, as all of Catron County's claims require here, the QTA provides the exclusive source of the Court's jurisdiction.  In Block v. North Dakota, 461 U.S. 273 (1983), North Dakota sought to establish control to a river bed as against the United States under theories that jurisdiction was afforded to the federal courts to adjudicate the dispute pursuant to an "officer's suit" by North Dakota and pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 702.  North Dakota's complaint did not mention the QTA.  Id. at 278, 281. The Supreme Court rejected North Dakota's attempt to avoid the requirements of the QTA, stating that regardless of how North Dakota crafted its pleading, its claim still sounded in quiet title and must satisfy the requirement of the QTA.  "We hold that Congress intended the QTA to provide the exclusive means by which adverse claimants could challenge the United States' title to real property."  Id. at 286; see also id. at 286 n.22 (stating that the QTA "expressly 'forbids the relief'" sought pursuant to the APA).  As the Supreme Court noted, "[i]f North Dakota's position

were correct, all of the carefully-crafted provisions of the QTA deemed necessary for the protection of the national public interest could be averted." Id. at 284-85.

Similarly, in United States v. Mottaz, 476 U.S. 834 (1986), a plaintiff sought to avoid the requirements of the QTA by pleading her attempt to establish her interests in Indian livestock grazing allotments pursuant to various federal statutes and the Fifth Amendment. Id. at 838. As in Block, the Supreme Court noted that the plaintiff "seeks to avoid the carefully crafted limitations of the Quiet Title Act by characterizing her suit as a claim for an allotment under the General Allotment Act of 1887." Id. at 844. Reiterating that the QTA provides the exclusive means for bringing cases that depend on the resolution of a dispute with the United States over a property interest, the Supreme Court stressed that allowing such claims to proceed without strict application of the requirements of the QTA "could also seriously disrupt ongoing federal programs," posing "precisely the threat to ongoing federal activities on the property that the Quiet Title Act was intended to avoid." Id. at 847. "In light of Congress' purposes in enacting the Quiet Title Act, we cannot conclude that Congress intended to permit persons in respondent's position to avoid that Act's strictures." Id. at 847-48.

In Rosette, Inc. v. United States, 141 F.3d 1394 (10th Cir. 1998), an owner to a surface estate questioned the United States' authority to regulate the geothermal resources under the estate and styled its complaint as one for "quiet title, ejectment, declaratory judgment and permanent injunction." Id. at 1395-96. The Tenth Circuit applied the Supreme Court's holding in Block, stating that "[i]nsofar as [the plaintiff's] current claims are all linked to the question of title, the Quiet Title Act provides the exclusive remedy." Id. at 1397. "Allowing [the plaintiff] to maintain a declaratory judgment action under these circumstances would undermine the policies set forth in Block." Id.

As in <u>Block</u>, <u>Mottaz</u>, and <u>Rosette</u>, all of Catron County's claims are inextricably linked to the question of whether the County holds title to a right-of-way across National Forest System lands.  The QTA provides Catron County with the exclusive remedy for its claims in this matter.  As discussed above, Catron County has not met the requirements of the QTA for bringing its claim to quiet title to a right-of-way pursuant to R.S. 2477 ("First Claim for Relief"), and the County cannot evade those requirements through derivative claims seeking to have this Court 1) declare that Catron County holds a right-of-way ("Second Claim for Relief") or 2) compel the Forest Service to provide the County access to that right-of-way ("Third Claim for Relief").  Indeed, in <u>Friends of Panamint Valley v. Kempthorne</u>, 499 F. Supp. 2d 1165 (E.D. Cal. 2007), the district court rejected and dismissed for lack of subject matter jurisdiction almost identical declaratory judgment and mandamus claims in an R.S. 2477 case (brought by the same counsel that the County uses here), because such claims "can only be brought pursuant to the Quiet Title Act's narrow waiver of sovereign immunity."  <u>Id.</u> at 1177-79.  Because all of Catron County's claims are dependent on Catron County quieting title to its alleged right-of-way, Catron County's Second and Third Claims for Relief are barred and must be dismissed.

## <u>CONCLUSION</u>

Catron County knew or should have known no later than 1977 that the United States took a position that the area where Catron County now seeks to quiet title to a right-of-way for a "public highway" contained no public roads.  Therefore, the County's quiet title claim is barred by the Quiet Title Act's twelve-year statute of limitations and judgment should be entered in favor of Federal Defendants.  In addition, the County's quiet title claim is barred because the Complaint does not meet the pleading with particularity requirements of the QTA, and the

County's second and third claims cannot be pursued outside the QTA's statute of limitations.

Plaintiff Catron County, through counsel of record, has been consulted and opposes this Motion.


Respectfully submitted this 5th day of July, 2012.


IGNACIA S. MORENO
Assistant Attorney General
U.S. Department of Justice
Environment and Natural Resources Division

   /s/ Andrew A. Smith          
ANDREW A. SMITH
Senior Attorney
U.S. Department of Justice
Environment and Natural Resources Division
Natural Resources Section
c/o United States Attorneys Office
P.O. Box 607
Albuquerque, New Mexico 87103
Phone: (505) 224-1468
Fax: (505) 346-7205
andrew.smith@usdoj.gov



KENNETH J. GONZALES
United States Attorney

RUMALDO R. ARMIJO
Assistant United States Attorney
P.O. Box 607
Albuquerque, New Mexico 87103
(505) 224-1509
Rumaldo.Armijo@usdoj.gov

***Attorneys for Federal Defendants***

*Of Counsel*:

    Cassandra Cassaus Currie
    Office of General Counsel
    U.S. Department of Agriculture

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 5, 2012, I filed through the United States District Court ECF System the foregoing document to be served by CM/ECF electronic filing on the following parties and attorneys of record:

Kathryn Joy Brack Morrow
Budd-Falen Law Offices LLC
kathryn@buddfalen.com

Karen Budd-Falen
Budd-Falen Law Offices LLC
karen@buddfalen.com

Bruce Cullen Hallmark
ch@garbhall.com

and I caused the foregoing document to be served, via U.S. Mail, on the following:

Gregory Smestad
3061 Sombra Del Rio
Albuquerque, NM 87107

Edward Atwood
16 Atwood Lane
P.O. Box 508
Reserve, NM 87830

Jessie Hardin
32 Frisco Penn Road
P.O. Box 688
Reserve, NM 87839

Donlee Martin
1280 Desert Air
HC 75
P.O. Box 1540
Chaparral, NM 88021

Joe Guzman
12208 N. Bentsen Road
RR 13, 776
Edinburg, TX 78541

Corey Pullig
c/o Lewis William Kelly

- 26 -

300 Mountain Road
Rio Rancho, NM 87124

Lewis W. Kelly
300 Mountain Road
Rio Rancho, NM 87124

   /s/ Andrew A. Smith_____
ANDREW A. SMITH
U.S. Department of Justice