IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

THE BOARD OF COMMISSIONERS OF
CATRON COUNTY, NEW MEXICO,

       Plaintiff,

                                                      Civil No. 12-237 MV/WPL

v.

UNITED STATES OF AMERICA, *et al.*,

       Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on the Motion to Dismiss and Memorandum in Support [Doc. 35] filed by the Board of Commissioners of Catron County, New Mexico ("Catron County") and Hugh B. McKeen and Glyn Griffin ("Third Party Defendants"); the United States' Motion to Dismiss and Memorandum in Support [Doc. 37]; and the Motion to Dismiss by Defendants Clothier and Drake [Doc. 39]. The Court, having considered the motions, briefs, relevant law and being otherwise fully informed, finds that Catron County's Motion will be granted in part and denied in part as moot; the United States' Motion is well-taken and will be granted; and Clothier and Drake's Motion will be denied as moot.

### BACKGROUND

In 1866, Congress provided for public access across unreserved public domain by granting rights-of-way for the construction of highways. The Act of July 26, 1866, § 8, ch. 262, 14 Stat. 251, 253, *codified at* 43 U.S.C. § 932 ("The right of way for the construction of highways over public lands, not reserved for public uses, is hereby granted."), *repealed by* Federal Land Policy and Management Act of 1976 ("FLPMA"), Pub. L. No. 94-579 § 706(a), 90 Stat. 2743, 2793.

1

This 1866 statute, commonly referred to as "R.S. 2477," was self-executing in some states, meaning that an R.S. 2477 right-of-way could come into existence without formal action by public authorities whenever the public sufficiently indicated its intent to accept the grant by establishing a public highway across public lands. *See S. Utah Wilderness Alliance v. Bureau of Land Mgmt.*, 425 F.3d 735, 770 (10th Cir. 2005). When Congress enacted the FLPMA, although it repealed R.S. 2477, it preserved "any valid" right-of-way "existing on the date of approval of this Act." Pub. L. No. 94-579, §§ 702(a), 706(a), 90 Stat. 2743, 2786, 2793 (1976). Accordingly, rights-of-way under R.S. 2477 that were perfected before the repeal of the 1866 statute, and which have not lapsed, remain valid today. States or local governments may file suits to quiet title against the United States if they can demonstrate that the grant of a right-of-way was accepted prior to the statute's repeal in 1976.

The United States, however, is immune from suit except when Congress explicitly waives sovereign immunity. *Block v. North Dakota*, 461 U.S. 273, 280 (1983). With the Quiet Title Act ("QTA"), 28 U.S.C. Section 2409a, Congress provided a limited waiver of sovereign immunity for actions to quiet title against the United States. The QTA provides that "[t]he United States may be named as a party defendant in a civil action under this section to adjudicate a disputed title to real property in which the United States claims an interest, other than a security interest or water rights." 28 U.S.C. § 2409a(a).

In the instant case, Catron County alleges that, based on a resolution it passed in 2006, it possesses a valid right-of-way under R.S. 2477, over a portion of what it describes as the "River Road." Doc. 1 (Complaint) ¶¶ 36-40. According to Catron County, this portion of the River Road, which runs from "south of the San Francisco Plaza to the Kelly Ranch," traverses both federal land, managed by the Forest Service, and private land, owned by the Individual

Defendants.  *Id.* ¶¶ 24-32, 40, 51-52.  Neither the United States nor the Individual Defendants recognize the existence of Catron County's alleged right-of-way.  For this reason, on March 7, 2012, Catron County filed a three-count Complaint to Quiet Title, seeking:  (1) to quiet title under the QTA to that portion of the River Road over which it allegedly possesses a right-of-way; (2) to "quiet title through declaratory relief," under 28 U.S.C. Section 2201(a), to its alleged right-of-way; and (3) a writ of mandamus compelling the Forest Service, under 28 U.S.C. Section 1361, to provide Catron County access to its alleged right-of-way.  *Id.* ¶¶ 79-103.

Defendants Van Clothier and John Drake (the "Individual Defendants"), on May 22, 2012 and June 6, 2012, respectively, filed Counterclaims and Third Party Claims ("Counterclaims") against Catron County and the Third Party Defendants.  Docs. 23, 25.  The Individual Defendants assert identical claims, namely, state law claims of quiet title, trespass, and inverse condemnation, and a federal constitutional claim under 42 U.S.C. Section 1983, alleging violation of their civil rights.  *Id*.

The United States filed a motion to dismiss the Complaint on July 6, 2012.  Doc. 37.  Additionally, the Individual Defendants filed a motion to dismiss on July 12, 2012.  Doc. 39.  Catron County filed a response in opposition to both motions on July 26, 2012.  Doc. 43.  The United States and the Individual Defendants filed reply briefs on August 22, 2012 and August 2, 2012, respectively.  Docs. 56, 46.  The Individual Defendants also filed a response in support of the United States' motion on August 2, 2012.  Doc. 45.

In turn, on June 27, 2012, Catron County and the Third Party Defendants filed a motion to dismiss the Counterclaims filed by the Individual Defendants.  Doc. 35.  The Individual Defendants filed a response in opposition on July 10, 2012.  Doc. 38.  A reply brief by Catron County and the Third Party Defendants followed on August 10, 2012.  Doc. 52.

**LEGAL STANDARD**

"Federal courts are courts of limited jurisdiction; they are empowered to hear only those cases authorized and defined in the Constitution which have been entrusted to them under a jurisdictional grant by Congress."  *Henry v. Office of Thrift Supervision*, 43 F.3d 507, 511 (10th Cir. 1994) (citations omitted).   Plaintiff bears the burden of establishing this Court's jurisdiction over its claims.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 104 (1998).   Before considering the merits of a case, the Court is responsible for ensuring that it has subject matter jurisdiction.  *Daigle v. Shell Oil Co.*, 972 F.2d 1527, 1539 (10th Cir. 1992).

Under Rule 12(b)(1), a party may assert by motion the defense of the Court's "lack of subject-matter jurisdiction."   Fed. R. Civ. P. 12(b)(1).   Motions to dismiss for lack of subject matter jurisdiction "take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which the subject matter jurisdiction is based."   *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002).   On a facial attack, the Court considers the complaint's allegations to be true.  *Id.*   On the other hand, when the motion challenges the factual basis for an action, the Court "may not presume the truthfulness of the complaint's factual allegations."   *Campos v. Las Cruces Nursing Ctr.*, No. CIV 11-0096, 2011 WL 5238921, *4 (D.N.M. Sept. 30, 2011) (citation omitted).   Rather, the "court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)."   *Id.*   Reference to evidence outside the pleadings does not convert the motion to a summary judgment motion.  *Id.*

**DISCUSSION**

I.    The Motions to Dismiss the Complaint

The United States argues that Catron County's claim under the QTA must be dismissed for lack of jurisdiction on two independent grounds:   first, Catron County's claim is barred by the QTA's twelve-year statute of limitations; and second, Catron County fails to meet the pleading requirements of the QTA.   The United States further argues that, because Catron County's remaining claims may be brought only pursuant to the QTA, those claims are equally barred, and must be dismissed for lack of jurisdiction.   As set forth herein, the Court agrees, and thus need not reach the additional bases for dismissal argued by the Individual Defendants.

    A.    The QTA Statute of Limitations

In order to bring a valid claim against the United States under the QTA, a party must commence the action within twelve years of the time it knew or should have known of the United States' claim of interest in the property.   Specifically, the QTA provides:

> Any civil action under this section, except for an action brought by a State, shall be barred unless it is commenced within twelve years of the date upon which it accrued.   Such an action shall be deemed to have accrued on the date the plaintiff or his predecessor in interest knew or should have known of the claim of the United States.

28 U.S.C. § 2409a(g).   Timeliness under this provision "is a jurisdictional prerequisite to suit under section 2409a." *Knapp v. United States*, 636 F.2d 279, 282-82 (10th Cir. 1980); *see also Spirit Lake Tribe v. North Dakota*, 262 F.3d 732, 738 (8th Cir. 2001) ("[T]he QTA statute of limitations acts as a jurisdictional bar unlike most statutes of limitations, which are affirmative defenses.").   As a jurisdictional condition on the waiver of sovereign immunity, "[t]he twelve-year limitations period is strictly construed in favor of the United States." *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 599 F.3d 1165, 1176 (10th Cir. 2010).

Further, "the trigger for starting that twelve-year clock running is an exceedingly light one." *George v. United States*, 672 F.3d 942, 944 (10th Cir.), *cert. denied*, 133 S. Ct. 432 (2012). Specifically, "[t]he QTA's limitations period begins running as soon as the plaintiff . . . 'knew or should have known of the claim of the United States.'" *Id.* (quoting 28 U.S.C. § 2409a(g)). The clock thus starts running when a plaintiff "*objectively* should have known about the government's claim." *Id.* (emphasis in original).

Under this test, "[t]he government need not provide explicit notice of its claim." *Rio Grande Silvery Minnow*, 599 F.3d at 1176. "Knowledge of the claim's full contours is not required. All that is necessary is a reasonable awareness that the Government claims some interest adverse to the plaintiff's." *Knapp*, 636 F.2d at 283. Accordingly, "the starting point of the limitations clock is not dependent on the plaintiff knowing the precise nature of the property interest upon which the United States predicates its claim of title." *Rio Grande Silvery Minnow*, 599 F.3d at 1177. Nor are the merits of the government's claim or assertion of adverse interest relevant, as "even invalid government claims trigger the QTA limitations period." *Id.* Rather, "simply put, the limitations period is triggered when a landowner has reason to know that the government claims some type of adverse interest in that land." *Id.* In particular, the Tenth Circuit has held that "the QTA's limitations clock starts running as soon as the federal government publishes a property claim in the Federal Register and a QTA plaintiff . .. is 'subject to or affected by' it." *George*, 672 F.3d at 944-45; *accord*, *S.W. Four Wheel Drive Ass'n v. BLM*, 271 F. Supp. 2d 1308, 1312 (D.N.M. 2003) (holding that publication in Federal Register of notice designating area as a "Wilderness Study Area" "provided notice that triggered the QTA's statute of limitations"), *aff'd on other grounds*, 363 F.3d 1069 (10th Cir. 2004).

Here, the United States contends that Catron County's quiet title claim accrued in November 1977, with publication in the Federal Register of a list of areas inventoried as "roadless" under the Forest Service's second Roadless Area Review and Evaluation ("RARE II"). *See* Doc. 37-3.  A "roadless area" is defined as "an area of undeveloped Federal land within which there are no improved roads maintained for travel by means of motorized vehicles intended for highway use."  *Id*.  Included in the list was the "Devil's Creek Roadless Area," which the United States argues, and Catron County does not deny, encompasses the right-of-way that Catron County claims over the River Road.  *Id*.  According to the United States, the Forest Service's determination of the area encompassing the River Road as "roadless" constitutes an adverse interest in Catron County's alleged right-of-way to the River Road; Catron County had reason to know of this adverse interest in 1977, upon publication in the Federal Register of the Forest Service's determination; and the Federal Register publication thus triggered the statute of limitations for Catron County's quiet title action.  Because Catron County commenced the instant action in 2012, more than twelve years after the 1977 publication of the RARE II inventoried roadless areas list, the government argues that Catron County's claim is barred by the QTA statute of limitations.

In support of its argument, the United States cites to *S.W. Four Wheel Drive*, a decision from this District in which the plaintiffs sought to quiet title in certain roads to which they claimed a right-of-way under R.S. 2477.  271 F. Supp. 2d at 1310.  The roads were located within an area that had been designated as a "roadless" Wilderness Study Area ("WSA") by the Bureau of Land Management.  *Id*.  The roadless designation was published in the Federal Register.  *Id*.  The Court held that the BLM's designation, as published in the Federal Register, "put Plaintiffs and the public on notice in 1980 that BLM claimed all of the area and did not recognize any alleged

7

rights-of-way, thus triggering the 12 year limitations period for challenging that finding." *Id.* at 1312.

Catron County disagrees with the United States' contentions, and its reliance on *S.W. Four Wheel Drive*. According to Catron County, the inclusion of the area surrounding the River Road as an inventoried roadless area was insufficient to alert Catron County of a federal claim adverse to its interests in its alleged right-of-way. Catron County notes that it and members of the public continued to use the River Road after 1977, and that the United States never barred them from doing so. According to Catron County, the inventory taken pursuant to RARE II was no more than that – an inventory – and did not affect the public's use of the area in any way. Thus, Catron County concludes, publication of the Forest Service's roadless area determination did not constitute a cloud on Catron County's title sufficient to trigger the limitations period.

In support of its argument, Catron County cites to a decision from the Eastern District of California, *County of Inyo v. Dep't of Interior*, in which, as did the plaintiffs in *S.W. Four Wheel Drive*, the plaintiff county sought to quiet title to alleged rights-of-way located within areas designated as roadless WSA's. No. CV 06-1502, 2008 WL 4468747 (E.D. Cal. Sept. 29, 2008). The Court declined to follow *S.W. Four Wheel Drive*, which it described as "non-authoritative and not particularly helpful," and found instead that the "BLM's declaration that an area is 'Roadless' does not constitute a claim that is sufficient, in and of itself, to commence the running of the statute of limitations." *Id.* at *9.

The Court explained, however, that the WSA designation *would* be a cloud on the plaintiff's title if the plaintiff was "either presently or contingently prevented from some use or enhancement of the right of way." *Id.* Specifically, the Court noted that BLM's determination that the land in question was a WSA triggered a duty on behalf of the BLM "to prevent degradation

8

of existing wilderness values," thus impairing the plaintiff's "ability to enhance or up-grade any of its rights of way for a period of about 2 years." *Id.* at 11. That impairment, the Court found, although temporary, was "sufficient to give rise to an action under the Quiet Title Act." *Id.* Accordingly, the Court held that the plaintiff's QTA claims were time-barred. *Id.*

Contrary to the *Inoyo* Court's position, controlling precedent in this Circuit clearly dictates that there need not be an actual impairment of the use of property in order for the plaintiff to be on notice of an adverse governmental interest in that property. *See Rio Grande Silvery Minnow*, 500 F.3d at 1188 ("[O]ur precedent does not allow plaintiffs to wait until the adverse claims of title asserted by them and the United States crystallize into well-defined and open disagreements before commencing a quiet title action."). As the Tenth Circuit held in *George*, "[t]he limitations period isn't triggered only when the government acts to *enforce* its claim – by tearing down a fence, issuing a citation, or the like." 672 F.3d at 946 (10th Cir. 2012) (emphasis in original). Rather, "[i]t is enough if the plaintiff or her predecessor knew or should have known of the existence of *some* assertion – some claim – by the government of an adverse right." *Id.* at 947 (emphasis in original) (citation omitted). For example, in *Knapp*, "a QTA claim accrued when the plaintiffs learned of the government's claim to some interest in their land by way of a record search – and long before the government *did* anything adverse to the plaintiff or definitively asserted its claim to title." *George*, 672 F.3d at 947 (citing *Knapp*, 636 F.2d at 282) (emphasis in original).

In light of this precedent, the Court finds persuasive the holding in *S.W. Four Wheel Drive* that publication in the Federal Register of an area's designation as "roadless" provides sufficient notice of an adverse governmental claim to trigger the QTA's statute of limitations. Without question, the Forest Service's designation of the Devil's Creek Roadless Area as an area of federal public land unencumbered by any improved roads maintained for highway vehicle use constitutes

an "assertion of 'some interest adverse' to the plaintiff." *George*, 672 F.3d at 946. Publication in the Federal Register of this designation was sufficient to trigger the QTA's statute of limitations. Because more than twelve years elapsed between that publication and commencement of the instant action, Catron County's quiet title claim is barred by the QTA's statute of limitations.

Indeed, even if it were to adopt the reasoning of *County of Inoyo*, the Court would be bound to conclude that the statute of limitations had run before the instant action was commenced. In 1999, the Forest Service issued an interim rule suspending road construction and reconstruction within the RARE II inventoried roadless areas. *See* Doc. 37-10. This interim rule would have proscribed Catron County's right to construct or reconstruct its alleged right-of-way, which Catron County alleges needs regular reconstruction. *See* Doc. 1 ¶ 48 ("Although the proximity to the river frequently makes this road impassable, the situation has always been quickly remedied by landowners, the public, and/or Catron County."). Under *County of Inoyo*, "[t]hat impairment, even though temporary, . . . was [] sufficient to give rise to an action under the Quiet Title Act." 2008 WL 4468747, at *11. The fact that Catron County commenced the instant action in 2012, more than twelve years after the 1999 issuance of the interim rule suspending road construction and reconstruction in the area encompassing Catron County's alleged right-of-way, is alone a sufficient basis to find Catron County's quiet title claim time-barred.

   B. <u>The Pleading Requirements of the QTA</u>

A complaint seeking to quiet title as against the United States must clearly identify the plaintiff's property claims, as well as the United States' adverse claims in that same property. Specifically, the QTA provides that "[t]he complaint shall set forth with particularity the nature of the right, title, or interest which the plaintiff claims in the real property, the circumstances under which it was acquired, and the right, title, or interest claimed by the United States." 28 U.S.C. §

2409a(d).  As a condition on the United States' waiver of sovereign immunity, a failure to satisfy these pleading requirements is a jurisdictional bar to a plaintiff's quiet title claim.  *See United States v. Mottaz*, 476 U.S. 834, 843 (1986) (holding that the QTA "provides the United States' consent to suit concerning its claim to [certain] lands, provided, of course, that the plaintiff challenging the Government's title meets the conditions attached to the United States' waiver of immunity"); *Washington County v. United States*, 903 F. Supp. 40, 42 (D. Utah 1995) (holding that by failing to identify "with particularity" any interest in real property or describing "the circumstances under which" any property interest was acquired, plaintiff "failed to comply with the conditions and requirements of 28 U.S.C. § 2409a by which the United States consents to suit in quiet title actions").

   Here, the United States contends that the Complaint fails to plead sufficiently either the nature of the right, title, or interest that Catron County claims in the real property, or the circumstances under which it was acquired.  Specifically, the United States argues that while the Complaint identifies the general location of the alleged right-of-way, it fails to allege the actual location, its length, course, precise width, starting point, or end point.  Further, according to the United States, while the Complaint acknowledges that the lands containing the alleged right-of-way "were placed into Forest Service status via Presidential Proclamation on March 2, 1899," before Catron County came into existence, the Complaint never explains how title to the alleged right-of-way would have vested pursuant to R.S. 2477 in some other, unidentified entity, and then would have been transferred to Catron County, once it did come into existence.

   Rather than directly refuting these contentions, Catron County responds that "[t]here is no question that all of the parties to this litigation know the details of the road that is at issue in the present litigation."  Doc. 43 at 11.  Noting that it has provided a "thorough description" of the

11

road's history, usage, surrounding properties and trajectory, Catron County argues that "[d]etails such as the width of the road, the length of the road, etc. are issues that are evidentiary issues that will necessarily be determined through the process of this litigation." *Id.* at 13.

Despite the detailed descriptions of its alleged right-of-way contained in the Complaint, the Court finds that Catron County falls short of satisfying the pleading requirements of the QTA. Catron County's allegations as to the nature of its claimed right-of-way are undisputedly imprecise. A plaintiff is not relieved of its obligation to plead its interests in property with precision, simply because the other parties may know the details of the property at issue. *Hazel Green Ranch, LLC v. U.S. Dep't of Interior*, No. 07-cv-414, 2010 WL 1342914, *6 (E.D. Cal. Apr. 5, 2010) ("It is of no moment that Plaintiffs claim to have met with Federal Defendants to discuss the roads. The complaint must stand on its own."), *aff'd*, 490 F. App'x 880 (9th Cir. 2012). Further, references to maps used in prior litigation, without attachment of those maps as exhibits to the Complaint, is insufficient to cure its pleading deficiencies. Accordingly, Catron County has failed to plead with the requisite particularity the nature of the right, title, or interest which it claims in the real property.

Moreover, as the United States argues, the Complaint is devoid of any allegations identifying which entity held title to the alleged right-of-way pursuant to R.S. 2477 prior to 1899, when the land was transferred to the federal government, or how title was subsequently transferred from that entity to Catron County, after the County came into existence and before the initiation of this action. Catron County fails to address this deficiency. Absent allegations concerning these elements of Catron County's quiet title claim, the Complaint fails to plead, with the requisite particularity, the circumstances under which it acquired title to the alleged right-of-way.

C.	Catron County's Remaining Claims

In addition to its express QTA claim seeking to quiet title to its alleged R.S. 2477 right-of-way, Catron County also requests a declaratory judgment that it possesses an R.S. 2477 right-of way, and a writ of mandamus against the Forest Service to provide access over the alleged right-of-way. The United States argues that these additional claims are foreclosed, as they depend on quieting title against the United States, and thus the QTA provides the exclusive source of the Court's jurisdiction. In its response, Catron County does not address this argument.

The Supreme Court has unequivocally held "that Congress intended the QTA to provide the exclusive means by which adverse claimants could challenge the United States' title to real property." *Block*, 461 U.S. at 286. In *Block*, the State of North Dakota sought to establish control to a river bed as against the United States under theories that jurisdiction was afforded to the federal courts to adjudicate the dispute pursuant to an "officer's suit." *Id.* at 278, 281. North Dakota's complaint did not mention the QTA. The Supreme Court stated that, regardless of how North Dakota crafted its pleading, its claim sounded in quiet title, and thus must satisfy the requirements of the QTA. The Court noted, "[i]f North Dakota's position were correct, all of the carefully-crafted provisions of the QTA deemed necessary for the protection of the national public interest could be averted." *Id.* at 284-85.

Thereafter, in *Mottaz*, the Supreme Court reiterated that the QTA provides the exclusive means for bringing cases that depend on resolution of a dispute with the United States over a property interest. 476 U.S. at 844. The Court rejected the plaintiff's effort to avoid the limitations of the QTA by characterizing her suit as a claim for an allotment under the General Allotment Act of 1887. *Id.* According to the Court, allowing such claims to proceed without strict application of the requirements of the QTA "could . . . seriously disrupt ongoing federal

13

programs," posing "precisely the threat to ongoing federal activities on the property that the Quiet Title Act was intended to avoid." *Id.* at 847.

Here, Catron County's claims for a declaratory judgment and a writ of mandamus "are [both] linked to the question of title," and thus, "the Quiet Title Act provides the exclusive remedy." *Rosette v. United States*, 141 F.3d 1394, 1397 (10th Cir. 1998). As set forth above, Catron County cannot meet the jurisdictional requirements of the QTA. Accordingly, its declaratory judgment and mandamus claims must be dismissed for lack of subject matter jurisdiction. *See Friends of Panamint Valley v. Kempthorne*, 499 F. Supp. 2d 1165, 1177-79 (E.D. Cal. 2007) (dismissing for lack of jurisdiction declaratory judgment and mandamus claims seeking a title determination to an alleged R.S. 2477 right-of-way, because such claims "can only be brought pursuant to the Quiet Title Act's narrow waiver of sovereign immunity").

II.     The Motion to Dismiss the Counterclaims

Catron County and the Third Party Defendants argue that the Court should dismiss, under Rule 12(b)(6), the Individual Defendants' federal constitutional claims as against the Third Party Defendants based on qualified immunity, and as against Catron County on the ground that the Counterclaim fails to adequately allege municipal liability. Once these claims are dismissed, Catron County and the Third Party Defendants argue, the Court should decline to exercise supplemental jurisdiction over the remaining state law claims. Although they originally sought dismissal, under Rule 12(b)(5), on the additional basis that service had not been properly effected, Catron County and the Third Party Defendants have since abandoned that argument.

As set forth herein, the Court *sua sponte* finds that the Individual Defendants' federal constitutional claims are not ripe for adjudication, and that the Court thus lacks subject matter jurisdiction over those claims. Accordingly, the Court need not address the bases for dismissal of

14

those claims presented by Catron County and the Third Party Defendants. Also as set forth herein, the Court agrees that it should decline to exercise supplemental jurisdiction over the Individual Defendants' remaining state law claims.

    A.    <u>Federal Constitutional Claims</u>

The Individual Defendants each assert a Section 1983 claim, alleging that Catron County and the Third Party Defendants violated their rights to due process and equal protection, and their rights under the Just Compensation Clause of the Fifth Amendment. Doc. 23 ¶¶ 47, 54; Doc. 25 ¶¶ 46, 52. Although Catron County and the Third Party Defendants do not raise a jurisdictional challenge, this Court has "an independent duty to examine whether it ha[s] subject matter jurisdiction over [these claims]." *Harris v. PBC NBADL, LLC*, 444 F. App'x 300, 2011 WL 5120697, **1 (10th Cir. Oct. 31, 2011), *cert. denied*, 132 S. Ct. 2432 (2012). The issue of whether the Individual Defendants' constitutional claims are ripe for adjudication bears on this Court's subject matter jurisdiction. *Bateman v. City of West Bountiful*, 89 F.3d 704, 706 (10th Cir. 1996). Specifically, these claims are subject to dismissal under Rule 12(b)(1) if they are not ripe for adjudication.

In their Counterclaims, the Individual Defendants assert state law claims for inverse condemnation *simultaneously* with their constitutional claims. Accordingly, they have not yet sought, and been denied, compensation from Catron County or the Third Party Defendants pursuant to New Mexico's inverse condemnation law. The Supreme Court, however, has made clear that "if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." *Williamson Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 195 (1985). "Because the Fifth Amendment does not require compensation to be paid before a

deprivation occurs, a 'taking' is not complete until the State fails to provide 'just compensation' for the property. *Bateman*, 89 F.3d at 708. Under New Mexico law, a property owner may bring an inverse condemnation action whenever private property is taken or damaged for public use without a formal exercise of the State's eminent domain power. *See* NMSA 1978, § 42A-1-29. "Thus, because the State of [New Mexico] has provided a procedure for obtaining compensation for a taking of private property for public use, and because the Fifth Amendment 'requires that a property owner utilize procedures for obtaining compensation before bringing a § 1983 action,'" the Individual Defendants' failure to avail themselves of the procedure *before* bringing their Section 1983 claims renders those claims premature. *Bateman*, 89 F.3d at 709 (quoting *Williamson*, 473 U.S. at 195 n.13) (emphasis added).

The Individual Defendants' "due process and equal protection claims stand on no firmer jurisdictional footing." *Bateman*, 89 F.3d at 709. Indeed, "[t]he Tenth Circuit repeatedly has held that the ripeness requirement of *Williamson* applies to due process and equal protection claims that rest upon the same facts as a concomitant takings claim." *Id.* (collecting cases). Based on these authorities, the Court must conclude, as did the Tenth Circuit in *Bateman*, that the Individual Defendants' "due process and equal protection claims are subsumed within the more particularized protections of the Takings Clause." *Id.* (citation omitted). Accordingly, the "failure [of the Individual Defendants] to obtain a final and definitive pronouncement regarding [their] property renders these ancillary constitutional claims unripe." *Id.*

The Court thus holds that the Individual Defendants' Section 1983 claims, based on alleged violations of their rights to due process and equal protection, and their rights under the Takings Clause, are not ripe for adjudication. The Court thus will dismiss these claims for lack of subject matter jurisdiction.

B.	State Law Claims

The Individual Defendants each assert state law claims of quiet title, trespass and inverse condemnation.  Doc. 23 ¶¶ 11-39; Doc. 25 ¶¶ 11-38.  As set forth above, the Court has decided to dismiss the federal claims alleged in the Complaint, in addition to the federal claims contained in the Counterclaims.  Having thus dismissed all of the federal claims in this action, this Court is authorized to dismiss the Individual Defendants' supplemental state claims as well.  *Bateman*, 89 F.3d at 709.

Specifically, the Court has discretion to decline to exercise jurisdiction where, as here, it has dismissed "all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  "The Supreme Court has instructed that 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims.'" *Merrifield v. Bd of County Comm'rs for Santa Fe*, 654 F.3d 1073, 1085 (10th Cir. 2011) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).  Further, the Tenth Circuit has "generally held that if federal claims are dismissed before trial, leaving only issues of state law, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice."  *Brooks v. Gaenzle*, 614 F.3d 1213, 1229 (10th Cir. 2010).

Taking into consideration the relevant factors, and following Tenth Circuit precedent, the Court declines to exercise supplemental jurisdiction over the Individual Defendant's state law claims.  The interests of judicial economy, convenience, fairness and comity all weigh in favor of allowing the state court the opportunity to resolve those claims.  Accordingly, the Court will dismiss, without prejudice, the Counterclaims in their entirety.

## CONCLUSION

Catron County's quiet title claim is barred by the QTA's twelve-year statute of limitations. Additionally, Catron County fails to plead its claim under the QTA with the requisite particularity. For these two, independent reasons, Catron County's quiet title claim must be dismissed for lack of jurisdiction. Because the QTA provides the exclusive means by which Catron County can challenge the United States' title to its alleged right-of-way, Catron County's remaining claims for declaratory relief and a writ of mandamus must be brought under the QTA. These claims, however, must be dismissed for lack of jurisdiction, as Catron County fails to meet the jurisdictional requirements of the QTA. The Individual Defendants' federal constitutional claims are not ripe for adjudication, and thus must be dismissed for lack of jurisdiction. The Court declines to exercise supplemental jurisdiction over the Individual Defendants' remaining state law claims.

**IT IS THEREFORE ORDERED** that the Motion to Dismiss and Memorandum in Support [Doc. 35] filed by Catron County and the Third Party Defendants is granted in part and denied in part as moot, as follows: the Court *sua sponte* dismisses the Section 1983 claims set forth in the Counterclaims for lack of subject matter jurisdiction, declines to exercise supplemental jurisdiction over the state law claims set forth in the Counterclaims, and thus dismisses the Counterclaims in their entirety.

**IT IS THEREFORE FURTHER ORDERED** that the United States' Motion to Dismiss and Memorandum in Support [Doc. 37] is granted, and the Motion to Dismiss by Defendants Clothier and Drake [Doc. 39] is denied as moot, as follows: the Court dismisses the Complaint in its entirety for lack of subject matter jurisdiction.

DATED this 27th day of March, 2013.

_____
MARTHA VÁZQUEZ
United States District Judge